IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| John Thomas Ridgeway, | ) | Civil Action No.: 3:10-490-RBH |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Robert M. Stevenson, III, *Warden Broad River Correctional Institution*, | ) ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner, a state prisoner, brought this habeas corpus petition pursuant to 28 U.S.C. § 2254. Petitioner is represented by attorney John H. Blume ("Attorney Blume").

On July 23, 2010, Respondent filed his [Docket Entry 17] Motion for Summary Judgment, along with a return and memorandum in support, [Docket Entry 16]. On August 16, 2010, Petitioner filed his [Docket Entry 20] Motion for Summary Judgment and Response in Opposition to Respondent's summary judgment motion. Thereafter, Respondent filed his [Docket Entry 21] Response in Opposition to Petitioner's summary judgment motion on August 27, 2010.

This matter is now before the court with the [Docket Entry 22] Report and Recommendation ("R & R") of United States Magistrate Judge Joseph R. McCrorey[1] filed on January 13, 2011. In his R & R, the Magistrate Judge recommended that "Petitioner's motion for summary judgment [should] be denied, that Respondent's motion for summary judgment [should] be granted, and that the petition [should] be dismissed without an evidentiary hearing." R & R at 13 (emphasis omitted). On January 17, 2011, Petitioner timely filed objections to the R & R. *See* Obj. [Docket Entry 23].

---

[1] This matter was referred to Magistrate Judge McCrorey pursuant to Local Rule 73.02(B)(2)(c), D.S.C.

**Background**

In October of 1999, Petitioner Ridgeway, Kevin Bergin ("Bergin"), and Sarah Nickel ("Nickel") executed a plan to rob and murder Nickel's mother, Mrs. Davis, in Beaufort County, South Carolina. All three were eventually apprehended after the crime. On January 8, 2001, pursuant to a negotiated plea, Petitioner and Bergin pled guilty to murder and armed robbery. *See* App. [Docket Entry 16-8] at 60-89. Scott W. Lee, Esquire, represented Petitioner at the plea hearing. *Id.* at 60. The trial court deferred sentencing so that Petitioner and Bergin could testify for the State at Nickel's trial. The record shows that Petitioner did testify in Nickel's subsequent trial. *See id.* at 91 through App. [Docket Entry 16-9] at 77. Thereafter, on February 8, 2001, Petitioner was sentenced to imprisonment for concurrent terms of thirty (30) years. App. [Docket Entry 16-9] at 83.

A direct appeal was filed on Petitioner's behalf by the South Carolina Office of Appellate Defense by way of an *Anders*[2] brief raising the following issue:

> Whether the judge erred by instructing appellant he could appeal his guilty plea, since the offer of an appeal informed appellant the plea could be set aside on a reserved issue, and therefore made the plea an impermissible conditional plea?

*Anders* Brief [Docket Entry 16-1] at 4. The South Carolina Court of Appeals dismissed the appeal on October 28, 2002. *See* Court of Appeals Opinion [Docket Entry 16-2]. Remittitur was returned on December 3, 2002. Remittitur I [Docket Entry 16-3].

On June 24, 2002, Attorney Blume filed Petitioner's post-conviction relief ("PCR") application. App. [Docket Entry 16-8] at 3. In the PCR application, Petitioner alleged that his guilty plea was involuntary, trial counsel was ineffective, and his sentence was disproportionate in light of the totality of relevant circumstances. *Id.* at 3-12. The PCR court held an evidentiary hearing on

---

[2] *Anders v. California*, 386 U.S. 738 (1967).

April 15, 2008. *Id.* at 21. At the beginning of the hearing, Attorney Blume stated the issues for the benefit of the PCR court:

> [T]he case really raises two substantive challenges to [Petitioner's] guilty plea. The first is that there was no on-the-record showing of the elements of the offense or no explanation of it; and second, and probably more fundamentally, no factual basis was ever offered for the guilty plea before the Court accepted it.

*Id.* at 24. The PCR court heard testimony at the hearing from Petitioner's trial counsel. On May 13, 2008, the PCR court issued an order dismissing Petitioner's PCR application. *Id.* at 53-59.

Petitioner then filed a petition for a writ of certiorari with the South Carolina Supreme Court raising the following issues:

> I.  Did Petitioner's guilty plea satisfy the requirements established by the United States Supreme Court and this court for a knowing, voluntary, and intelligent plea due to the trial judge's failure to apprize Petitioner of the elements of the offenses or to obtain a factual basis for the plea?
>
> II. Was Petitioner denied the right to effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments because trial counsel failed to ensure that the plea satisfied the state and federal constitutional requirements?

Petition for Writ [Docket Entry 16-4] at 5. The South Carolina Supreme Court denied the petition for writ of certiorari on May 28, 2009. Letter Order [Docket Entry 16-6]. Remittitur was returned on June 15, 2009. Remittitur II [Docket Entry 16-7].

## Federal Habeas Grounds

In his § 2254 Petition, Petitioner raises the following grounds, verbatim:

[**Ground One:**]  Petitioner's guilty plea was not knowing, voluntary and intelligent, and thus violated the Due Process Clause, because the trial judge failed to enumerate the critical and material elements of the charged offenses during the plea colloquy.

> i. On December 6, 1999, the Beaufort County Grand Jury indicted Petitioner

3

for the murder and armed robbery of Ms. Nell Davis. Pursuant to a plea agreement, Petitioner, who was only seventeen years old at the time of the offense, agreed to plead guilty and testify against a co-defendant, Sara Nickel, the victim's daughter, in exchange for a thirty-year sentence. Petitioner pled guilty on January 8, 2001. During the plea colloquy, the judge failed to fulfill the constitutional requirement of insuring that Petitioner's plea was knowing, voluntary and intelligent.

ii. The trial judge failed to explain and define the elements of the charged offenses. During the plea colloquy, the trial judge asked Petitioner and his attorney a series of questions. The trial judge asked counsel if he had advised Petitioner of the charges in the indictment, the possible punishments, and the right to jury trial. Petitioner's attorney answered affirmatively. (T$R_I$.$_2$4). After asking several preliminary questions, the judge asked Petitioner "do you understand the charges you're faced with, sir, as well as the punishment you could receive?" Petitioner responded affirmatively. (T$R_I$. 8). The trial judge next informed Ridgeway of his right to remain silent, to a jury trial, and to confront the witnesses. (T$R_I$. 9-10). The court also asked Petitioner for an admission of guilt. (T$R_I$. 19-20). After several more inconsequential questions, the judge accepted Petitioner's guilty plea. Then, the judge asked the State for the "elements in essence of the crime." (TRI. 20). However, the elements of the offense were never presented to the court or discussed during the plea colloquy.

iii. Petitioner's guilty plea fails to satisfy *Boykin v. Alabama*, 395 U.S. 238 (1969), and its progeny. Petitioner could not properly admit to the offenses of armed robbery or murder without fully understanding the elements of those charges. Furthermore, during the sentencing phase of the plea hearing, after the trial court accepted the plea, Petitioner stated he had no intent to kill the victim. (T$R_{II}$. 5). Clearly, this statement runs counter to the definition of murder, the killing of a person with malice aforethought either express or implied, *see* S.C. Code Ann. § 16-3-10, and indicates that Petitioner did not understand the critical elements of murder and armed robbery when he admitted his guilt and entered his plea to those charges.

[**Ground Two:**]     Petitioner's guilty plea was not knowing, voluntary and intelligent, and thus violated the Due Process Clause, because the trial judge failed to establish a factual basis for Petitioner's guilty plea to murder and armed robbery.

i. The trial judge failed to establish a factual basis prior to accepting petitioner's plea. The "on the record" factual basis requirement protects a defendant from waiving his fundamental constitutional rights without adequately understanding that the conduct does or does not actually fall within the legislatively defined criteria. United States v. Moussaouri 2010 WL 9953, * 34 (4$_{th}$ Cir., Jan. 4, 2010) However, the record of this case is completely devoid of any legally adequate description of the facts giving rise to the indictments.

ii. At no time prior to the trial court accepting the plea or pronouncing sentence were the facts of the case presented to the court. During the sentencing proceeding, the solicitor stated that he was unaware if the court received a "factual recitation of what occurred in this matter" and, therefore, deferred to the judge to determine if a factual basis was necessary during the sentencing phase. The Judge responded that he "remember[ed] it well." (TrII. 3). That, however, was inadequate. The factual basis must be on the record before the plea is accepted, and this record lacks any mention whatsoever of the relevant facts. Henderson v. Morgan, 426 U.S. 637 (1976) (plea violated due process because there was no record evidence that defendant had the requisite intent). *See also United States v. Punch* 709 F.2d 889 (5th Cir. 1983) (holding that requirements of Rule 11 are not satisfied where defendant was read abbreviated version of indictment, which noticeably failed to mention the most critical element of two offenses); *United States v Graves*, 720 F.2d 821 (5th Cir. 1983) (holding that transcript of pleas of guilty fails on its face to show a defendant's understanding of charged offenses where colloquy does not establish any explanation or understanding of rather complex legal rules and principles to which defendants were pleading guilty); *United States v Corbett*, 742 F.2d 173 (5th Cir. 1984) (holding a guilty plea involuntary where a trial judge made a bare inquiry of defendant regarding whether he understood the nature of charges against him, without reading charges or explanation of charges because it is a complete failure to address issue of whether defendant understands nature of charges, precluding acceptance of guilty plea); *Coody v United States*, 570 F.2d 540 (5th Cir 1978) (noting that routine questions on subject of understanding nature of charges are insufficient under Rule 11, and single response by defendant that he understands charge gives no assurance or basis for believing he does); *United States v Boatright*, 588 F.2d 471 (5th Cir. 1979) (holding that reading an indictment to defendant is usually not adequate explanation of charges to defendant, and fact that defendant has also gone over indictment with his attorney does not satisfy requirements of Rule 11); *United States v Cobos*, 590 F.2d 1338 (5th Cir. 1979) (noting that where the prosecutor read the indictment but court did not undertake to inform defendant of nature of offense charged, judgment of conviction on guilty plea must be reversed); *United States v Zampitella*, 416 F.Supp 604 (E.D. Pa. 1976) (noting that a guilty plea is involuntary where the record fails to show that the trial court ascertained whether a factual basis existed for guilty plea and the judge's presentence report was not placed on record when he accepted plea).

iii. The factual basis requirement also serves other important constitutional interests. First, presenting the facts in open court and on the record allows the judge to determine that the conduct in which the defendant engaged actually falls within the definition of the crime charged. *U.S. v. Martinez*, 277 F.3d 517, 531 (4th Cir. 2000). Second, a presentation of the relevant facts provides the defendant an opportunity to object to any false or inaccurate statements. *United States v. Marglitz*, 773 F.2d 1463, 1464, n.1 (4th Cir. 1985). Third, a factual basis ensures that the conduct alleged by the

prosecution is the actual conduct to which the defendant admits. *Moussaoui, supra* at * 34. These factors further the public's interest of convicting the guilty and exonerating the innocent. Establishing a factual basis is critical to just adjudication and a knowing, voluntary and intelligent guilty plea.

[**Ground Three:**]     Petitioner's sentence violates the Due Process and Cruel and Unusual Punishment Clauses of the United States Constitution and Article One, Section Three of the South Carolina Constitution because it is disproportionate in light of the totality of relevant circumstances.

i. Petitioner's sentence is disproportionate to his culpability. Petitioner, who was a juvenile at the time of the offense, received a sentence of thirty years imprisonment for his role in the death of Nell Davis. Petitioner was clearly less culpable than his two codefendants. In fact, a jury actually acquitted one co-defendant, Sarah Nickel, the daughter of the victim, of murder. The jury, however, found Nickel guilty of armed robbery and sentenced her to thirty years, of which she must serve only 85%. Petitioner's involvement in the tragic events pales in comparison to acts of his co-defendants. Petitioner received the exact sentence as his co-defendant, Kevin Bergin, who actually killed the victim. Petitioner also received a greater sentence than that of Nickel, who planned the events which ultimately culminated in the death of her own mother.

ii. Failure to tailor the sentences to the individual defendants and to their respective culpability violates due process and constitutes cruel and unusual punishment.

§ 2254 Petition at 4-6.

## Standard of Review of Magistrate Judge's R & R

The Magistrate Judge makes only a recommendation to the court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The court is obligated to conduct a *de novo* review of every portion of the Magistrate Judge's

6

report to which objections have been filed. *Id.* However, the court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of a timely filed, specific objection, the Magistrate Judge's conclusions are reviewed only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

### Habeas Corpus Standard of Review

Petitioner brought this action pursuant to 28 U.S.C. § 2254. Section 2254 states in pertinent part that:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id* § 2254(e)(1).

In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court explained that § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. *Id.* at 404-05. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in Supreme Court cases, or if it decides a case differently

than the Supreme Court has done on a set of materially indistinguishable facts. *Id.* at 405-06. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions but unreasonably applies it to the facts of the particular case. *Id.* at 407-08.

**Discussion**

I.    Disproportionate Sentence

Petitioner alleges that he is entitled to habeas relief because his sentence is disproportionate to those of Bergin and Nickel. In his R & R, the Magistrate Judge determined that this claim is "procedurally barred and [Petitioner] ha[d] not sought to show cause or prejudice." R & R at 8. Further, the Magistrate Judge found that "the Fourth Circuit ha[d] held that 'proportionality review . . . is not available for any sentence less than life imprisonment.'" *Id.* (quoting *United States v. Malloy*, 568 F.3d 166, 180 (4th Cir. 2009)). Although Petitioner did file objections to the R & R, none of his objections relate to the disproportionate sentence claim. Thus, having reviewed the face of the record for clear error and finding none, the court adopts the Magistrate Judge's recommendation as to this claim. *See Diamond*, 416 F.3d at 315.

II.   Involuntary Guilty Plea

"A guilty plea . . . is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). A guilty plea must reflect 'a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). "In evaluating the constitutional validity of a guilty plea, 'courts look to the totality of the circumstances surrounding [it], granting

8

the defendant's solemn declaration of guilt a presumption of truthfulness.'" *United States v. Moussaoui*, 591 F.3d 263, 278 (4th Cir. 2010) (quoting *Walton v. Angelone*, 321 F.3d 442, 462 (4th Cir. 2003) (internal citation omitted)).

A.  Elements

Petitioner, citing *Boykin v. Alabama*, 395 U.S. 238 (1969), contends that his guilty plea "violated the Due Process Clause, because the trial judge failed to enumerate the critical and material elements of the charged offenses during the plea colloquy." § 2254 Petition at 4. However, the Magistrate Judge concluded that "the record [was] sufficient to establish the findings by the PCR court that there was no violation of *Boykin v. Alabama*." R & R at 11. Petitioner timely objected to this recommendation.

1.  Applicability of § 2254(d)

In his objections, Petitioner first argues that "the state court failed to address the merits of th[is] claim, thus rendering § 2254(d) inapplicable." Obj. at 2. Section 2254(d)'s standard of review applies only for claims that were "adjudicated on the merits in State court proceedings." However, if a petitioner has properly presented a claim to a state court but that state court has not adjudicated the claim on the merits, the court's review is *de novo*. *See Weeks v. Angelone*, 176 F.3d 249, 258 (4th Cir. 1999).

Upon review, the court finds that the state PCR court did adjudicate Petitioner's elements claim on the merits. While much of the PCR court's order was couched in terms of a claim of ineffective assistance of counsel, the PCR court discussed the requirements of a knowing and voluntary guilty plea, and specifically found that Petitioner's "plea was entered knowingly, voluntarily, and intelligently pursuant to Boykin v. Alabama." App. [Docket Entry 16-8] at 55-56.

In so finding, the PCR court noted that Petitioner's trial counsel had "extensive experience in the trial of serious offenses," and that trial counsel and Petitioner had "discussed the facts of the case, possible defenses, and [Petitioner's] constitutional rights." *Id.* at 57. Further, the PCR court noted that Petitioner's "testimony at Nickel's trial . . . demonstrated [his] knowledge of the elements of the charged offenses." *Id.* Accordingly, because the PCR court specifically determined the merits of this claim, this court's review is pursuant to § 2254(d).[3]

### 2. Merits of Claim

In the R & R, the Magistrate Judge concluded that the record sufficiently established the "finding by the PCR court that there was no violation of *Boykin v. Alabama*." R & R at 11. Specifically, the Magistrate Judge stated the following:

> The PCR court had before it the transcript of [Petitioner's] guilty plea as well as the testimony of trial counsel at the [PCR] hearing. . . . That record reflects a statement by trial counsel that he fully explained the charges to [Petitioner] prior to the plea and an affirmation at the plea by [Petitioner] that he understood the charges. The record from the plea hearing is corroborated by trial counsel's testimony from the PCR hearing.

*Id.* Petitioner objected, and argued that "there is no evidence that anyone, neither trial counsel nor the court, even explained to petitioner the actual elements of the charged offenses prior to accepting petitioner's guilty plea." Obj. at 3. Upon review, the undersigned agrees with the Magistrate Judge's conclusion.

"Where a defendant pleads guilty to a crime without having been informed of the crime's elements, . . . the plea is invalid." *Bradshaw*, 545 U.S. at 183. However, the United States Supreme Court has "never held that the judge must himself explain the elements of each charge to the

---

[3] Even if the court were to consider Petitioner's elements claim *de novo*, it would be without merit for the same reasons stated by the court in Section II.A.2 of this Order.

defendant on the record." *Id.* To the contrary,

> the constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel. . . . Where a defendant is represented by competent counsel, the court usually may rely on that counsel's assurance that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty.

*Id.*

It appears to be undisputed in the record that the trial judge did not specifically advise Petitioner of the essential elements of murder and armed robbery at his change of plea hearing. However, at the plea hearing, the trial court did inquire with Petitioner's trial counsel whether he had "advised [his] client[] of the charges contained in the indictment[] against [him], the punishments applicable therefore, and [his] right[] to trial by jury[.]" App. [Docket Entry 16-8] at 63. Petitioner's trial counsel answered affirmatively. *Id.* The trial court continued with the following question, "In your opinion, do[es] [he] understand all that," and trial counsel once again answered affirmatively. *Id.* at 63-64. Later in the plea hearing, Petitioner likewise answered in the affirmative after the trial court asked him if he "underst[ood] the charges [he was] faced with . . . as well as the punishment [he] could receive." *Id.* at 66-67. Finally, the trial court asked Petitioner whether he and his "attorney [had] together fully reviewed and discussed the charges," and Petitioner responded, "Yes, Your Honor." *Id.* at 76-77.

Moreover, at the PCR hearing, the following exchange took place between Petitioner's trial counsel and Attorney Blume:

Blume: [D]o you have an independent recollection today as you sit here of whether you went over the elements of – all the elements of murder with [Petitioner]?

11

> Trial Counsel: I don't have an independent recollection of having a specific discussion with him and pulling out 16-310 and saying these are the elements of – of murder.

*Id.* at 32. Later in the PCR hearing, the PCR court questioned trial counsel regarding whether he and Petitioner discussed "those things"–including the pending charges–and trial counsel indicated that they were discussed. *Id.* at 37. Thereafter, the following exchange took place:

> PCR court: And [Petitioner] did in fact – you feel as though he understood the elements of murder?
>
> Trial Counsel: We had had – I believe Mr. Blume's question was did you sit down specifically and discuss the elements. There was no question that – that there was an unlawful killing. The real question was – was malice. I do remember some conversation regarding the use of a deadly weapon you can infer malice. But we did discuss the crime of murder and the crime of voluntary manslaughter, the crime of armed robbery, and all the lesser included with the thing.
>
> . . . .
>
> PCR court: All right. And based on your testimony, you indicated that you had discussed with him going to trial, and that would necessarily discuss the – I mean, include a discussion of the elements, wouldn't it?
>
> Trial Counsel: It would – it would include a discussion of what they needed to prove, which would be the elements, right.

*Id.* at 38-39. Finally, the PCR court concluded by asking Petitioner's trial counsel if he "felt like [Petitioner] understood the charges, the elements of the offense, and the potential consequences," and trial counsel responded that he "felt like [Petitioner] did at the time." *Id.* at 43.

As noted above, the PCR court determined that Petitioner's "plea was entered knowingly, voluntarily, and intelligently pursuant to <u>Boykin v. Alabama</u>." App. [Docket Entry 16-8] at 55-56. In making this determination, the PCR court had the benefit of Petitioner's trial counsel's testimony at the PCR hearing, in addition to the transcript of Petitioner's guilty plea. A review of the guilty

plea transcript reveals a statement by trial counsel that he fully explained the charges to Petitioner prior to the plea and an affirmation by Petitioner at the plea hearing that he understood the charges. *See United States v. White*, 366 F.3d 291, 295 (4th Cir. 2004) (holding that a defendant's statements made under oath at a guilty plea "'carry a strong presumption of verity'" (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977))). Moreover, the record from the guilty plea hearing is corroborated by trial counsel's testimony at the PCR hearing, during which he specifically testified that his discussions with Petitioner would have included what the State needed to prove–"which would be the elements [of the crimes charged]." *Id.* at 39. The court finds that the PCR court properly considered the "totality of the circumstances" in analyzing Petitioner's guilty plea. *See Moussaoui*, 591 F.3d at 278. Further, based on a review of the entire record, the PCR court's determination that Petitioner's guilty plea was validly entered was neither unreasonable nor contrary to clearly established federal law, nor resulted in an unreasonable determination of the facts.[4]

---

[4] Petitioner also argues in his objections that statements made by Petitioner during the sentencing phase of his plea "indicate[d] that Petitioner did not understand the critical elements of murder and armed robbery when he admitted his guilt and entered his plea to those charges." Obj. at 3 n.2. Specifically, Petitioner stated the following during his sentencing hearing, "I never came to Miss Davis' house for a murder. I never meant for that to happen. If I did, that's just not me." App. [Docket Entry 16-9] at 82. Petitioner contends that this statement shows "he had no intent to kill the victim" and further "indicates that Petitioner did not understand the critical elements of murder." Obj. at 3 n.2.

This statement made during Petitioner's sentencing hearing does not establish that his guilty plea was unknowingly and unintelligently entered. Petitioner only offered this statement during the mitigation phase of his sentencing hearing, and it does not necessarily invalidate his plea of guilty that was entered approximately one (1) month prior. *See Bradshaw*, 545 U.S. at 184-86. To the contrary, during his guilty plea colloquy, as discussed above, Petitioner affirmed the fact that he understood the charges that he was faced with, and that he and his trial counsel had fully reviewed and discussed the charges he faced. "[A] defendant's solemn declarations in open court affirming [a plea] agreement . . . 'carry a strong presumption of verity.'" *White*, 366 F.3d at 295 (quoting *Blackledge*, 431 U.S. at 74); *see also United States v. Bowman*, 348 F.3d 408, 417 (4th Cir. 2003) ("[A]n appropriately conducted Rule 11 colloquy can only serve meaningfully if the court is entitled to rely on the defendant's statements made under oath to accept a guilty plea."). Moreover, after entering his plea of guilty, Petitioner testified at Nickel's trial regarding his involvement in the crimes charged in this matter, which testimony was consistent with his prior plea of guilty. Specifically, Petitioner testified as follows, in pertinent part:

> We had eventually just about made up a plan, basically, to get money and

involved Mrs. Davis.  There was – there was a bunch of different plans.  A lot of them.  Some involved killing her whole family, some involved killing Ms. Davis. some involved killing Mr. Davis.  But we weren't – when we went there we weren't really – we weren't exactly – had a set plan.  Anything could've really happened but we didn't intend for what happened to happen like it happened.  If I'm making any sense.

. . . .

After that, we had went to CVS to buy hair nets, latex gloves.  I went in to buy.  We took a taxi back to my house; packed up all our stuff; put on the same color clothes, green shirt, brown pants. . . .

. . . About five, five minutes later [Nickel] came outside.  To fed [sic] her rabbit, supposedly, and had told us that, okay, her mom was here, like she said, and all that.  But she told us we looked scary with masks on.  We had masks on []cause we didn't want to have witnesses.  Obviously.

She then went – she said she was gonna get her mom, said something, something about she was gonna tell her that something's wrong with the rabbit.  That she – she – basically said something about the bitch is gonna die, went into the house.

Came back out about five minutes later. . . . When she walked past us, when her mom walked past us, when she did Kevin had hit her with the bat.  And he kept hitting her.  And she fell to the ground.  I mean she was – she was not, I don't believe, I'm not a doctor but I don't believe she was conscious.  She was in pretty bad shape.

. . . .

Went downstairs in her mom's room, showed me the safe.  Pretty big.  There was no way anyone was going to get into it.  Without knowing how.  I played with it for a minute.  Nothing happened as far as opening it.

I walked out.  There was a pair of diamond earrings on the desk.  [Nickel] had picked them up and put them in her ears.  Said they were real diamonds.  I guess – I guess we could sell them.

She handed me the pocketbook; I put it under her shirt – in my shirt . . . .

. . . .

We didn't know what to do.  Eventually, after talking about what to do with Ms. Davis we decided to put her in the box.  So that she wouldn't be found, basically.  Sooner.  Than it would've been otherwise.

And we did that.  I had – I had carried her by her feet and Kevin carried her by the wrists.  We put her in the box.

. . . .

As far as the stabbing, well, I didn't actually see it done. . . . But after she was in

B.   Factual Basis

In his objections, Petitioner contends that "[t]he factual basis for a plea must be on the record before the plea is accepted," and argues that "because no factual basis for the plea was presented to the trial court before the trial judge accepted petitioner's plea . . ., the state court's resolution of petitioner's challenge to his guilty plea was contrary to, and an unreasonable application of clearly established federal law . . . ." Obj. at 4-5.

It is undisputed that no factual basis was placed on the record before the trial court accepted Petitioner's plea of guilty. However, the Fourth Circuit has stated "there is no constitutional requirement that a state court establish a factual basis for a guilty plea before entering judgment on the plea . . . ."[5] *Edwards v. Garrison*, 529 F.2d 1374, 1376 (4th Cir. 1975). Other circuits have similarly held that "the due process clause does not impose a constitutional duty on state trial judges to ascertain a factual basis before accepting a plea of guilty . . . that is not accompanied by a claim of innocence." *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1983); *see Rodriguez v. Ricketts*, 777 F.2d 527, 528 (9th Cir. 1985); *Banks v. McGougan*, 717 F.2d 186, 188 (5th Cir. 1983); *White Hawk v. Solem*, 693 F.2d 825, 828 n.5 (8th Cir. 1982); *Roddy v. Black*, 516 F.2d 1380, 1383 (6th Cir.

---

the box, supposedly it happened then to make sure she wasn't alive anymore.

App. [Docket Entry 16-8] at 92-96. Additionally, Petitioner later testified that he owned the knives and baseball bat, and that the knife was used so that "[a]fter [they] had held the knife to Mrs. Davis she would – I would assume she would give us the code to the safe." App. [Docket Entry 16-9] at 8. Finally, the court is of the opinion that even considering Petitioner's statements made at sentencing, his last statement–"If I did, that's just not me"–negates his argument that he lacked the intent to kill. Again, his statements at sentencing were offered in mitigation, and while on the one hand, he says "I never meant for that to happen," on the other hand, he says, "If I did, that's just not me."

[5] Although the Magistrate Judge noted that "the Fourth Circuit ha[d] not specifically addressed the issue," it appears that the *Edwards* case does speak to the issue in question. Accordingly, this Order adopts as modified the Magistrate Judge's R & R as to this claim.

15

1975).

Petitioner has not raised a claim of factual innocence. The record reveals that Petitioner testified at Nickel's trial regarding his involvement in the crimes charged in this matter. Accordingly, the state court's determination of this claim should not be set aside as there was no constitutional requirement for an on-the-record factual recitation before acceptance of Petitioner's plea.[6]

### Conclusion

The court has thoroughly reviewed the R & R, objections, and applicable law. For the reasons stated above and by the Magistrate Judge, the court hereby overrules all of Petitioner's objections and adopts as modified and incorporates herein by reference the Magistrate Judge's R & R. Accordingly, Petitioner's [Docket Entry 20] Motion for Summary Judgment is **DENIED**. In addition, Respondent's [Docket Entry 17] Motion for Summary Judgment is **GRANTED**, and Petitioner's § 2254 Petition is hereby **DISMISSED** without an evidentiary hearing.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** because the Petitioner has failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

---

[6] The court notes that Petitioner cites several federal cases addressing claims that are based on Rule 11 of the Federal Rules of Criminal Procedure. However, Petitioner's reliance on these cases is misplaced as "Rule 11[] . . . applies to federal courts and not state courts. It is not a constitutional principle . . . ." *White Hawk*, 693 F.2d at 828 n.5; *see also United States v. Timmreck*, 441 U.S. 780, 783 (1979) (holding a violation of Rule 11 was "neither constitutional nor jurisdictional"); *McCarthy v. United States*, 394 U.S. 459, 465 (1969) (holding that the Rule 11 procedure "has not been held to be constitutionally mandated").

**IT IS SO ORDERED.**

                                           s/R. Bryan Harwell
                                           R. Bryan Harwell
                                           United States District Judge

Florence, South Carolina
February 11, 2011